**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART,**<br>**Plaintiff,**<br>**v.**<br><br>**JONATHAN CZYZEWSKI,**<br>**ROBERT PINKNEY, BLANCHE CARNEY,**<br>**and THE CITY OF PHILADELPHIA**<br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>: | **DOCKET NO. 23-cv-1890** |

**PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, by and through his attorney, Barry J. Goldstein, Esq., hereby files this motion to compel, and avers the following in support thereof:

1. On August 23, 2024, Defendants produced their answer to Plaintiff's Second Set of Interrogatories. A true and correct copy of this response is attached hereto and marked as Exhibit "A".

2. Defendants failed to several of Plaintiff's interrogatories, citing the Health Insurance Portability and Accountability Act, as well as the Pennsylvania Mental Health Procedures Act.

3. As set forth at length in Plaintiff's Amended Complaint, Plaintiff asserts that Defendants have a custom, policy, or practice of housing inmates with a known and documented history of violence, and who have been designated by medical personnel, both within the Philadelphia Department of Prisons ("PDP") and outside the prison system, as having a serious and severe mental illness ("SMI"), in the protective custody unit of the PDP for cost-saving reasons because the City does not want to incur the expense necessary to properly house these SMI inmates.

4. Plaintiff contends that the City's choice to house violent SMI inmates on the protective custody unit for cost-saving reasons was the "moving force" behind Plaintiff's significant injuries, and that the City disregarded a known or obvious consequence of this custom by mixing predator with prey, and housing the most dangerous and volatile inmates with the most vulnerable and susceptible inmates.

5. Plaintiff maintains that the City consistently failed to follow its policy of separating general population inmates by security level, which resulted in Plaintiff's injuries and constitutional rights being violated.

6. In order to prove municipal liability, Plaintiff has to first demonstrate that there was a constitutional violation, and since Plaintiff was a pretrial detainee at the times that he was assaulted, Plaintiff had a Fourteenth Amendment right to reasonable safety. *See Peronace v. City of Philadelphia*, 2024 WL 1660543 (E.D. Pa. April 16, 2024) *citing Bell v. Wolfish*, 441 U.S. 520, 537 (1979) and *Hubbard v. Taylor*, 399 F.3d 150, 167 n.23 (3d Cir. 2005).

7. Having established a constitutional violation, Plaintiff must then show municipal liability in the form of either a municipal custom or a failure to supervise. *Peronace,* supra.

8. A municipal custom may be established by showing a persistent and widespread course of conduct or practice of state officials which are so permanent and well-settled as to virtually constitute law even though not specifically authorized by law. *Mulholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2012).

9. A municipal custom may also be established by demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality. *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

10. By contrast, a failure to supervise involves showing that: a. municipal policymakers know that employees will confront a particular situation; b. the situation involves a history of employees mishandling; and c. the wrong choice of the employee will frequently cause a deprivation of constitutional rights. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).

11. Here, Plaintiff was court-ordered to be in protective custody, and spent four and a half years housed on the protective custody unit of the PDP awaiting trial during which time PDP employees placed over one hundred SMI inmates with a known and documented history of violence on the protective custody unit.

12. Consequently, dozens of inmates, including Plaintiff, who were placed on protective custody status were attacked and assaulted by these volatile inmates, causing serious and substantial injuries.

13. These attacks occurred routinely during the period of time that Plaintiff was in protective custody.

14. Plaintiff has not only requested the medical records of his two attackers in order to demonstrate that both were designated as SMI and were known to prison officials as being SMI and violent, including Dr. Albert who is the prison psychologist, but also to prove that prison officials ignored the warnings from medical personnel, including Dr. Albert, not to place these SMI inmates on the protective custody unit but rather on the behavioral health segregation unit for the safety of other inmates.

15. Plaintiff avers that prison personnel not only ignored the warnings for the two inmates who attacked him, but also ignored the warnings for the more than one hundred SMI inmates who were placed on the protective custody unit, all of which was undertaken for cost-

saving reasons since it is significantly more expensive to house a SMI inmate on the behavioral health segregation unit, and because there is limited space available on the behavioral health unit since the SMI inmates need to be segregated from one another in addition to the rest of the inmate population.

16. Discovery must always be "proportional to the needs of the case". Fed.R.Civ.P. 26(b)(1).

17. Our Supreme Court has held that a prisoner's right to privacy in his medical information " may be curtailed" by a policy that is "reasonably related to a legitimate penological interest." *Turner v. Safely*, 482 U.S. 78, 89 (1987).

18. There is no question that a legitimate penological interest exists in protecting the most vulnerable inmate population by placing those inmates on the protective custody unit where they are subject to increased security by correctional staff.

19. It is also beyond cavil that a legitimate penological interest exists in placing SMI inmates with a known history of violence on a behavioral health segregation unit, and not on a protective custody unit, for the health and safety of other protective custody inmates.

20. In order to prove his case, Plaintiff needs the medical records of the SMI inmates placed on the protective custody unit, why these inmates were placed on the protective custody unit instead of on the behavioral health segregation unit, and any assaultive behavior these SMI inmates exhibited on the protective custody unit, all of which can be provided to Plaintiff by redacting the names of the SMI inmates.

21. With respect to the two inmates who viciously attacked and assaulted Plaintiff, it is readily apparent that the medical histories of these inmates have already been disclosed to Plaintiff by Dr. Albert.

22. Notwithstanding this fact, there is a legitimate penological interest in eliminating the persistent and widespread practice of state officials placing dangerous and violent SMI inmates in the protective custody unit instead of in the behavioral health segregation unit for cost-saving reasons, thereby leaving other protective custody inmates at heightened risk for serious bodily injury.

23. For that reason, good cause exists for disclosing this information to Plaintiff in discovery subject to any protective orders imposed by the Court. See Exhibit "B" - proposed requests for production of documents and interrogatories to Defendants.

Respectfully Submitted,

Date: 9/6/2026

Barry J. Goldstein

Barry J. Goldstein, Esq.
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Barry Goldstein, attorney for Plaintiff, hereby certify that on the date below, Plaintiff's Motion to Compel was filed electronically and is available for viewing and downloading from the Court's Electronic Filing System. The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.

Benjamin T. Jackel
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor Philadelphia, PA 19102

Email: ben.jackal@phila.gov

Date: 9/6/2026

John Hart

Barry J. Goldstein, Esq.
Attorney for Plaintiff

**Barry J. Goldstein, Esquire**
**Attorney I.D. # 04970**
**233 Country Gate Road**
**Wayne, PA 19087**
**Phone: (215) 620-4265** **Attorney for Plaintiff**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART** | | |
| **Plaintiff,** | : | |
| | : | **DOCKET NO.: 23-cv-1890** |
| **vs.** | : | |
| | : | |
| **JONATHAN CZYZEWSKI,** | : | |
| **ROBERT PINKNEY, BLANCHE CARNEY,** | : | |
| **and THE CITY OF PHILADELPHIA** | : | |
| **Defendants.** | | |

**GOOD FAITH CERTIFICATION**

I, Barry J. Goldstein, attorney for Plaintiff hereby certifies that I made a good faith attempt to confer with the Defendant's counsel in an effort to avoid having to file this motion by:

(a) Sending an email to counsel for the Defendants on July 8, 2026 a true and correct copy of which is attached hereto and incorporated herein.

(b) Outlines the necessity for more specific responses.

Defendant has not responded to either of the communications set forth above.

Date: 9/6/2026

______________________________
Barry J. Goldstein, Esq.
Attorney for Plaintiff

# Hart v City of Philadelphia et al

**From:** barry j goldstein <bjgrcic@aol.com>
**To:** ben.jackal@phila.gov
**Date:** Jul 8, 2026, 5:49 PM

---

Ben

I appreciate the courtesy you have extended me without objecting to requests for continuances. I have encountered a problem in finding a replacement to take over this case because they all indicate they do not have enough information based on the discovery so far. My client is concerned that the judge will not continue to grant further continuances.. He has requested that I file additional discovery or a motion. I do not wish to get further involved at this point.

I have prepared a motion to compel which I am attaching hereto. I am NOT filing it. Please look it over and let me know what further information you can provide without me having to file the motion. Thanks for your continuing cooperation. Barry

---

Motion to Compel.docx
19 KB

Request for Production of Docs.docx
18 KB

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN HART,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JONATHAN CZYZEWSKI, ROBERT PINKNEY, BLANCHE CARNEY, AND THE CITY OF PHILADELPHIA**<br><br>**Defendants** | : | **Civil Action**<br>**No. 23-cv-1890** |

**DEFENDANTS, THE CITY OF PHILADELPHIA AND BLANCHE CARNEY'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Defendants, the City of Philadelphia and Blanche Carney ("Answering Defendants"), by and through their attorney, Benjamin T. Jackal, hereby serve these answers to Plaintiff's Second Set of Interrogatories pursuant to the Federal Rules of Civil Procedure. By serving these answers, Defendants do not waive any objections they may have to the admissibility of any materials or answers produced in response to these requests.

The following answers are made solely for the purposes of this action. Each answer is subject to all objections as to relevance, materiality, and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court.

No incidental or implied admissions are intended by these answers. The fact Answering Defendants have not objected or responded to an interrogatory shall not be deemed an admission that Answering Defendants accept or admit the existence of any

facts set forth or assumed by such interrogatory or that such objection or response constitutes admissible evidence. The fact that Answering Defendants object to part or all of any interrogatory is not intended to and shall not be construed to be a waiver by Answering Defendant of any part of any objection to any interrogatory.

The answers and objections are made on the basis of information and writings currently available to and located by Answering Defendants upon reasonable investigation. Answering Defendants expressly reserves the right to modify, revise, supplement, or amend its responses as it deems appropriate.

**GENERAL OBJECTIONS – INTERROGATORIES**

1. Answering Defendants object to each interrogatory to the extent it purports to include documents which are subject to the attorney-client privilege, attorney-work product doctrine, and/or any other applicable privilege.

2. Answering Defendants object to each interrogatory to the extent it is overly broad, unduly burdensome and/or seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. Answering Defendants object to each interrogatory to the extent it is duplicative, unreasonably cumulative and/or oppressive, argumentative, prejudicial, improper, incorrect, vague, and/or ambiguous. and/or to the extent that it will cause Answering Defendant to incur unnecessary expenses.

4. Answering Defendants object to each interrogatory to the extent that it purports to impose an obligation on Answering Defendant which is greater than that required by the Federal Rules of Civil Procedure.

5. Answering Defendants object to each interrogatory to the extent that it purports to seek the discovery of information relating to time periods and subject matters that have nothing to do with the events at issue in this litigation.

6. Answering Defendants object to each interrogatory to the extent that it requires Defendants to search for and produce documents or information that are not within their possession, custody, or control.

7. Answering Defendants object to the interrogatories to the extent that they seek legal conclusions and/or would require Answering Defendant to reach a legal conclusion in order to prepare a response.

8. Answering Defendants object to the interrogatories to the extent that they seek personal identifying information, including contact information, of third parties or they otherwise implicate the privacy and security interests of members or former members of the Philadelphia Department of Prisons.

9. Answering Defendants object to the interrogatories to the extent they exceed twenty-five in number, including all discrete subparts.

**RESERVATION OF RIGHTS – INTERROGATORIES**

All responses to the following document requests are made without in any way waiving but, on the contrary, intending to reserve and reserving:

1. All questions as to the competency, relevancy, materiality, privilege and admissibility for any purpose in any subsequent proceeding or the trial or arbitration of this or any other action;

2. The right to object on any grounds to the use of any of these documents, or the subject matter thereof, in any subsequent proceeding or the trial or arbitration of this or any other action;

3. The right to object on any grounds at any time to a demand for further responses to these or any other document request or other discovery proceedings involving or relating to the subject matter of the document requests herein answered; and

4. The right at any time to revise, correct, supplement, clarify and/or amend the responses and objections set forth herein.

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES**

1. At any time relevant to this action was Dr. Lynda Albert employed or retained as a prison psychologist?

**ANSWER: Answering Defendants object to this Interrogatory as not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiving their objections, yes. Dr. Lynda Albert is a psychologist and employed by the Philadelphia Department of Prisons.**

2. If the answer to interrogatory number one is in the affirmative, describe with particularity the duties and responsibilities of Dr. Albert.

**ANSWER: Answering Defendants object to this Interrogatory as vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiver of the foregoing objections, a description of Dr. Albert's job responsibilities as a "Psychologist 2" is publicly available at the City's website: https://www.phila.gov/departments/office-of-human-resources/job-specs/4A12.htm.**

3. Did Dr. Albert ever examine defendants Jonathan Czyzewski and/or Robert Pinkney?

**ANSWER: The City objects to this interrogatory as unduly violative of the privacy rights of incarcerated persons, not subject to disclosure pursuant to the Health Insurance Portability and Accountability Act and Pennsylvania Mental Health Procedures Act, overly broad, unduly burdensome, and not proportional to the needs of the case.**

4. If the answer to interrogatory number 3 is in the affirmative on what dates did any examination take place and what were the results of the examination?

**ANSWER: The City incorporates by reference its answer to Interrogatory 3 as though set forth at length herein.**

5. Did Dr. Albert prepare any report concerning the results of the examination and if so set forth the date of the report and attach a copy.

**ANSWER: The City incorporates by reference its answer to Interrogatory 3 as though set forth at length herein.**

6. Did the mental health department send any emails, or reports, or make any phone calls to prison officials concerning the physical and mental health of either Czyzewski or Pinkney and if so set for the dates of said communications and attach copies of any that are in writing.

**ANSWER: The City objects to this Interrogatory as vague and, by way of further answer, incorporates by reference its answer to Interrogatory 3 as though set forth at length herein.**

7. Was [*sic*] is the policy, custom or practice by the City of Philadelphia and/or defendant Carney to have two correctional officers working in the protective

custody unit at all times during first and second shift along with a third correctional officer to escort protective custody inmates?

**ANSWER: The City objects to this interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to PPD Policy 3.E.4 (D 1899–1907) regarding protective custody.**

8. What is the name and badge numbers of all correctional officers working in the protective custody unit during the time and date of the assault and for the week before?

**ANSWER: The City objects to this interrogatory as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to Plaintiff's Misconduct Reports for incidents on March 30, 2021, and June 10, 2021 (D00061–62).**

9. Was it the policy, custom or practice by the City of Philadelphia and/or defendant Carney of placing mentally ill inmates in the protective custody units?

**ANSWER: The City incorporates by reference its answer to Interrogatory 7 as though set forth at length herein.**

10. Describe the history of violence and mental illness of the defendants Czyzewski and Pinkney.

**ANSWER: The City objects to this interrogatory as vague, unduly violative of the privacy rights of incarcerated persons, not subject to disclosure pursuant to the Health Insurance Portability and Accountability Act and Pennsylvania Mental Health Procedures Act, overly broad, unduly burdensome, not temporally limited, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to the lock and track reports for Defendants Czyzewski and Pinkney (D1752–1840).**

11. At the time defendant Czyzewski was placed in the protective custody unit of CFCF was he known to prison officials that he had a history of violence and mental disability?

**ANSWER: The City objects to this interrogatory as vague, unduly violative of the privacy rights of incarcerated persons, not subject to disclosure pursuant to the Health Insurance Portability and Accountability Act and Pennsylvania Mental Health Procedures Act, overly broad, unduly burdensome, not temporally limited, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.**

12. Describe the practice and/or custom of classifying, assessing, placing and or housing of inmates to ensure the safety of other inmates.

**ANSWER: The City objects to this interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to PPD Policy 3.E.4 (D 1899–1907) regarding protective custody.**

13. Describe the particularity of the training of correctional officers and supervisors with regard to classification and assessment of inmates to prevent violent inmates.

**ANSWER: The City objects to this interrogatory as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to PPD Policy 4.B.1 (D 1923–1928) regarding classification of inmates.**

14. What was the custom, and practice of housing inmates who had a history of violence and mental illness.

**ANSWER: The City incorporates by reference its answer to Interrogatory 7 as though set forth at length herein.**

15. Does the City of Philadelphia have a special housing unit and if so where is it located?

**ANSWER: The City objects to this interrogatory as vague and not reasonably calculated to lead to the discovery of admissible evidence.**

16. What was the disposition of the grievances filed by the plaintiff and attached as Exhibits to the Second Amended Complaint?

**ANSWER: The City objects to this interrogatory as vague, and calling for a legal conclusion as to whether Plaintiff actually "filed" the grievances attached to his Second Amended Complaint.**

**Subject to and without waiver of the foregoing objection, unknown.**

17. Do you have any medical evaluations of the plaintiff of any injuries he sustained as a result of the assaulted he sustained?

**ANSWER: The City objects to this interrogatory as vague.**

**Subject to and without waiver of the foregoing objections, Answering Defendants refer to D1291–1397, regarding Plaintiff's medical care.**

**VERIFICATION**

I, Benjamin T. Jackal, a Deputy City Solicitor for the City of Philadelphia and counsel for Defendants, the City of Philadelphia and Blanche Carney, have conducted the investigation in this matter and the facts set forth in the foregoing Answers to Plaintiff's Interrogatories are true and correct to the best of my knowledge, information, and belief.

I understand that the statements contained in the foregoing written discovery responses of the Defendants are made subject to the penalties of 28 U.S.C. § 1746, relating to unsworn falsification to authorities.

Date: August 23, 2024

*/s/ Benjamin T. Jackal*
Benjamin T. Jackal
Deputy City Solicitor
Pa. Attorney ID No. 319274
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434
ben.jackal@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 23-cv-1890** |
| **JONATHAN CZYZEWSKI, ROBERT PINKNEY, BLANCHE CARNEY, AND THE CITY OF PHILADELPHIA** | : | |
| **Defendants** | : | |

**CERTIFICATE OF SERVICE**

I, Benjamin T. Jackal, Esquire, Attorney for Defendants in the above-captioned matter, certify that a true and correct copy of Defendant the City of Philadelphia and Blanche Carney's Answers to Plaintiff's Interrogatories were served on this date *via* electronic mail to Plaintiff's attorney as follows:

Barry J. Goldstein, Esquire
Attorney I.D. 4970
233 Country Gate Road
Wayne, PA 19087
(215) 620-4265
bjgrcic@aol.com

*Counsel for Plaintiff*

Date: August 23, 2024

*/s/ Benjamin T. Jackal*
Benjamin T. Jackal
Deputy City Solicitor
Pa. Attorney ID No. 319274
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434
ben.jackal@phila.gov

*Counsel for Defendants, the City of Philadelphia and Blanche Carney*

# EXHIBIT “B”

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART,** | : | **DOCKET NO. 23-cv-1890** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **JONATHAN CZYZEWSKI,** | : | |
| **ROBERT PINKNEY, BLANCHE CARNEY,** | : | |
| **and THE CITY OF PHILADELPHIA** | : | |
| **Defendants.** | | |

**PLAINTIFF'S THIRD SET OF REQUESTS FOR INTERROGATORIES DIRECTED TO DEFENDANTS**

Pursuant to the provisions of the Federal Rules of Civil Procedure, you are hereby requested to answer fully and completely the following interrogatories within thirty (30) days of the date of service of these Interrogatories.

**DEFINITIONS**

1. As used herein, the word "Defendants" shall mean City of Philadelphia and Blanche Carney, including their attorneys, insurers, subrogees, and representatives acting on their behalf.

2. As used herein, the words "you" and "your" shall refer to Defendants as defined herein.

3. As used herein, the words "every document" shall mean every writing or record, however produced, reproduced, or preserved, including but not limited to every book, pamphlet, periodical, letter, email, text message, memorandum, telegram, report, record, study, fax, interoffice or intraoffice communication, memorandum reflecting an oral communication, handwritten or other note, working paper, draft, application, permit, chart, drawing, paper, graph, survey, index, tape, disk, data sheet, data processing card, computer printout, and every other written, typed, recorded, transcribed, filed, or graphic matter, including such materials electronically recorded, filed, or maintained on discs, tapes, smartphones, or computers.

4. As used herein, the word "identify" when used in reference to:

a. a "person" or an "individual" shall mean to state his or her full name, present or last known business address (designating which), present or last known residence address (designating which), and present or last known business affiliation, job title, and employment address.

b. a "firm, partnership, corporation, proprietorship, association, or other organization or entity" shall mean to state its full name and present or last known address (designating which) and telephone number.

c. a "document" shall mean to describe the document with sufficient particularity to identify, locate, and produce such document without limitation, stating the title, date, author recipient, type of document (i.e., a letter memorandum, book, fax, chart, email, text message, etc.) or some better means of identifying it, and the subject matter of its contents.

5. As used herein, the time period shall refer to the dates between December 1, 2019 and the date on which the interrogatories are answered.

6. As used herein, the term "Incidents" shall refer to the matters as described in Plaintiff's Amended Complaint.

## INTERROGATORIES

1. State the name, home address, and business address of all persons known to you or your attorney or other representative who:

a. was a witness to the incidents through sight or hearing;

b. has knowledge of facts concerning the happening of the incidents; and

c. with respect to each person identified in the answer to the interrogatories above, state that person's exact location and activity at the time of the incidents.

2. How many inmates designated by the Philadelphia Department of Prisons ("PDP") as having a serious and severe mental illness ("SMI") with a known and documented history of violence have been housed on the protective custody unit of the PDP during the aforementioned time period?

3. How many of these SMI inmates have been involved in a physical altercation while housed on the protective custody unit of the PDP?

4. How many of these SMI inmates were recommended by the PDP psychology department to be housed on the behavioral health segregation unit of the PDP rather than on the PDP protective custody unit?

5. How many bed spaces are available on the behavioral health segregation unit of the PDP?

6. How many bed spaces are available on the protective custody unit of the PDP?

7. What was the average monthly inmate population on the behavioral health segregation unit of the PDP during the aforementioned time period?

8. What was the average monthly inmate population on the protective custody unit of the PDP during the aforementioned time period?

9. How much does it cost Defendant City of Philadelphia and the PDP per year to house an inmate on the protective custody unit of the PDP?

10. How much does it cost Defendant City of Philadelphia and the PDP per year to house an inmate on the behavioral health segregation unit of the PDP?

11. Why were SMI inmates with a known and documented history of violence housed on the protective custody unit of the PDP?

12. Why were SMI inmates with a known and documented history of violence not housed on the behavioral health segregation unit of the PDP?

13. Why were SMI inmates with a known and documented history of violence who were recommended by the PDP psychology department to be housed on the PDP behavioral health segregation unit instead of on the protective custody unit of the PDP?

14. Was Jonathan Czyzewski designated by the PDP as having a serious and severe mental illness, and specifically, paranoid schizophrenia with psychosis? If not, what mental illness did he have?

15 Was Robert Pinkney designated by the PDP as having a serious and severe mental illness? If so, what mental illness did he have?

16. Did Jonathan Czyzewski have a known and documented history of violence in the PDP? If so, state each incident of violence, and provide all actions the PDP took in response to each incident?

17. Did Robert Pinkney have a known and documented history of violence in the PDP? If so, state each incident of violence, and provide all actions the PDP took in response to each incident?

18. Why was Jonathan Czyzewski housed on the protective custody unit of the PDP? Why was Jonathan Czyzewski not housed on the behavioral health segregation unit of the PDP?

19. Why was Robert Pinkney housed on the protective custody unit of the PDP? Why was Robert Pinkney not housed on the behavioral health segregation unit of the PDP?

Respectfully Submitted,

_________________________

Barry J. Goldstein, Esq.
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART,** | : | **DOCKET NO. 23-cv-1890** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **JONATHAN CZYZEWSKI,** | : | |
| **ROBERT PINKNEY, BLANCHE CARNEY,** | : | |
| **and THE CITY OF PHILADELPHIA.** | : | |
| **Defendants.** | | |

**PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS**

Pursuant to the provisions of the Federal Rules of Civil Procedure, you are hereby requested to answer fully and completely the following request for production of documents within thirty (30) days of the date of service of these Requests.

**DEFINITIONS**

1. As used herein, the word "Defendants" shall mean City of Philadelphia and Blanche Carney, including their attorneys, insurers, subrogees, and representatives acting on their behalf.

2. As used herein, the words "you" and "your" shall refer to Defendants as defined herein.

3. As used herein, the words "every document" shall mean every writing or record, however produced, reproduced, or preserved, including but not limited to every book, pamphlet, periodical, letter, email, text message, memorandum, telegram, report, record, study, fax, interoffice or intraoffice communication, memorandum reflecting an oral communication, handwritten or other note, working paper, draft, application, permit, chart, drawing, paper, graph, survey, index, tape, disk, data sheet, data processing card, computer printout, and every other written, typed, recorded, transcribed, filed, or graphic matter, including such materials electronically recorded, filed, or maintained on discs, tapes, smartphones, or computers.

4. As used herein, the word "identify" when used in reference to:

a. a "person" or an "individual" shall mean to state his or her full name, present or last known business address (designating which), present or last known residence address (designating which), and present or last known business affiliation, job title, and employment address.

b. a "firm, partnership, corporation, proprietorship, association, or other organization or entity" shall mean to state its full name and present or last known address (designating which) and telephone number.

c. a "document" shall mean to describe the document with sufficient particularity to identify, locate, and produce such document without limitation, stating the title, date, author recipient, type of document (i.e., a letter memorandum, book, fax, chart, email, text message, etc.) or some better means of identifying it, and the subject matter of its contents.

5. As used herein, the time period shall refer to the dates between December 1, 2019 and the date on which the documents are produced.

6. As used herein, the term "Incidents" shall refer to the matters as described in Plaintiff's Amended Complaint.

**REQUESTS**

1. All statements of any and all witnesses including any and all statements of Plaintiff and Defendants, including Defendants' employees, relating to the incidents.

For purposes of this request, a statement is defined as a written statement signed or otherwise adopted or approved by the person making it, or a stenographic, mechanical, electronic,

or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

2. Any and all documents containing the names and home and business addresses of individuals contacted as potential witnesses.

3. The name address, and curriculum vitaes of any and all experts you intend to call at the time of trial.

4. Reports of any and all experts who will testify at trial.

5. All videotapes, audiotapes, emails, text messages, photographs, diagrams, surveys, and/or plans taken and/or prepared relating to the incidents, and/or any instrumentalities or persons involved in this action.

6. Copies of all non-privileged documents pertaining to the Incidents.

7. Provide all written communications and a substantially verbatim written account of all oral communications between Defendants' employees, and between Defendants' employees and the government agents prosecuting Plaintiff, about the Incidents.

8. All records, statements, and recordings, in any kind and in any form, pertaining to the criteria for housing inmates having a serious or severe mental illness ("SMI") in the protective custody unit of the Philadelphia Department of Prisons ("PDP").

9. All records, statements, and recordings, in any kind and in any form, pertaining to the criteria for housing SMI inmates in the behavioral health segregation unit of the PDP.

10. All records, statements, and recordings, in any kind and in any form, pertaining to SMI inmates involved in a physical altercation while housed in the protective custody unit of the PDP.

11. All records, statements, and recordings, in any kind and in any form, pertaining to SMI inmates who were recommended by the psychology department of the PDP to be housed on the

PDP behavioral health segregation unit but were instead housed on the PDP protective custody unit.

12. All records, statements, and recordings, in any kind and in any form, pertaining to the available bed spaces per month on the behavioral health segregation unit and the protective custody unit of the PDP.

13. All records, statements, and recordings, in any kind and in any form, pertaining to the cost of housing SMI inmates per month on the behavioral health segregation unit and the protective custody unit of the PDP.

14. All records, statements, and recordings, in any kind and in any form, pertaining to any cost-saving measures undertaken by the PDP to house SMI inmates on the protective custody unit of the PDP rather than on the PDP behavioral health segregation unit.

15. All records, statements, and recordings, in any kind and in any form, relating to Jonathan Czyzewski.

16. All records, statements, and recordings, in any kind and in any form, relating to Robert Pinkney.

This request is deemed to be continuing insofar that if any of the above is secured subsequent to the date herein for the production of same, said documents, photographs, statements, reports, etc. are to be provided to counsel within thirty (30) days of receipt of same.

Respectfully Submitted,

Date:

____________________________

Barry J. Goldstein, Esq.
Attorney for Plaintiff